and the 518-0426. Good morning, your honor. May it please the court and counsel, my name is Eric Terlizzi. I practice in Salem. I represent the defendant appellant Brittany Bierman as special administrator of the estate of Blake Edward Miller. This is a case of, apparently, as far as counsel on either side could find, a case of first impression for the state of Illinois. So I'm happy that the 5th district will get to decide it. The issue that is to be decided is when a automobile insurance policy defines an insured as a resident relative and then goes on to define a relative as someone related to the named insured or his or her spouse that's based on marriage cease if the spouse either divorces or dies upon which the relationship is based. It's important, I think, to keep in mind that there's two factors here for my deceit, Mr. Miller, to be an insured under this policy for purposes of uninsured motorist and med pay coverage under the three policies that we'll get into in a minute. But he not only has to be a relative but a resident relative, which means he must reside with this person to whom he is or was related. And this came up on cross motions for summary judgment. So essentially the parties were acknowledging and admitting to the court that there were no triable issues of fact. And the facts are pretty, as far as the residents and the relationship, are, I think, pretty much undisputed. And that is that Blake Edward Miller, his father was a David Miller. David was married to Winnie Robertson from 1993 to 2003. David, Blake, was born in 1986. So he was seven when his dad married Winnie. They stayed married for ten years. The record is also clear that after the divorce, David, the dad, continued to reside with Winnie for another six years until he died in 2009. And then we come to, so basically Blake was with Winnie, his stepmom, and David, his dad, from the time he was seven years old until after high school. And then we come to December of 2015. And at that point, Blake, a little bit down on his luck, had no place to live, calls up Winnie and says, can I stay with you? Winnie, being his stepmom, says, yeah, come on, Blake, come on. But she wasn't his stepmom at that point, was she? She was his former stepmom. You're right. There was a divorce in 2003 and there was a death of David in 2009. But she took him in. She says she was expecting it to be a week. And you know how that goes when you get somebody in your house and you expect it to be a week? The week turned into a month. The month turned into six months. And then on June... Sometimes that's a good thing. That's a good thing. That's a wonderful thing. Good for Winnie. And by the way, she seemed like a wonderful lady in her depositions. Really nice lady. But by June 18, 2016, unfortunately, Blake goes bar hopping with his cousin, Jared. They leave the last bar and Jared runs off the road and David ends up being ejected, seriously injured, dies about three weeks later. Jared, admittedly, was uninsured. So at that point, then, we made an uninsured motorist claim. And so what it boils down to, and I think we've cited multiple case law that says what all of your honors are clearly familiar with, the longstanding case law that says if a policy is subject to two or more reasonable constructions, then the construction which is more favorable to the insured is the one the court has to choose, not should choose or may use its discretion, but must choose. So the question is, is it all reasonable to argue that someone is still related by marriage if the spouse upon whom that relation depends has either been divorced or dead? And in this case, it's both. Divorced, winning, and then he passed away. So is that a reasonable interpretation? Now, unusual, I guess, to concede that the other side has a reasonable argument, but I'll do that up front. I think State Farm, and I told the trial court this, has a reasonable argument to say no, just as your honors has pointed out. If the step-parent dies or gets divorced, that's no longer the stepchild. Is that a reasonable argument? I mean, that's literal. It's a literal and it's a reasonable argument. But is it unreasonable to make the other argument that says when a step-parent dies, that doesn't mean that his children are no longer stepchildren, either in practice, in reality, how the world actually works, or under the law. Well, counsel, is it – I'm sorry. So is it reasonable for this court to not look at a literal interpretation? Well, the court could. And it is – that would be a reasonable result. The question – that is not the question before the trial court or this court. The question is, is it unreasonable to take the opposite view? And your honor, we cited a multitude of cases. We cited a – I'm surprised, and I don't know why there's not some more recent case law, but we cited a Seventh Circuit case from 1935 that cited – that was cited under Wisconsin law. It wouldn't be binding on this court, even if it was Illinois law, since it's the Seventh Circuit, but it cited Wisconsin, Pennsylvania, California, Minnesota, Maryland, Kentucky, Iowa, New Jersey, and New York, all for the proposition that a relationship of – by marriage does not terminate on either the death or dissolution of the parent upon whom that relationship is dependent. Mr. Jolici. Yes. Is that how you pronounce it? That's correct, Your Honor. You keep talking about whether they remain a step-parent or remain a step-child. Yes. And by using those words, you're using legal – legally recognized relationships. That's correct. The case law, however, talks about a relationship by affinity. What do you have to say about that? Yeah, but – I mean, that's a very different concept. Well, I don't know, Your Honor. That's interesting too, because – and I think to some extent that's because these cases that we've cited are, in fact, older, and that may just be an older term. I looked it up to see what the dictionary definition is, and of course, there's multiple definitions of an affinity. You can have an affinity for anything, but as far as in this relation, the dictionary definition is affinity is a relationship based on marriage. And I think it's two sides of the same coin, Your Honor. I don't know any difference – Well, there may be a difference for property reasons or inheritance. I don't know. But a relationship by affinity could just be the relationship that's developed because of the marriage or whatever. Well, none of the cases – The case law does indicate that. Well, none of the cases that I've seen indicate that a – some relationship that was not at one time based on marriage – I didn't say that. If it's based on marriage, as this one was, and there's a death or a divorce, the case law you cited seems to say that the relationship by affinity remains. That's correct. And – Thus, there's coverage. That's correct. And these were – these were all insurance cases, too, Your Honor. And the exact language, no rule is known to us under which the relation by affinity is lost on a dissolution of the marriage more than that by blood is lost by the death of those to whom it is derived. The dissolution of a marriage once lawful by death or divorce has no effect upon the issue, and it is apprehended that it can have no better operation to annul the relation by affinity which it produced. The IRS – we cited a Code of Federal Regulations, too, that says – now, this is for tax purposes. It's not for insurance purposes. But here's the quote. The relationship of affinity once existing will not terminate by divorce or the death of a spouse. So – and the point is – Is that for claiming a dependent? Mm-hmm. Yeah, it's for – it's for tax code purposes, obviously. What other purpose would there be under the tax code? That's right. There wouldn't be any. It's not directly applicable. But what it – what it – what it clearly shows, though, is that our argument is not unreasonable. And again, it's not a question – you say, is their argument more reasonable or is our argument more reasonable? It's irrelevant as long as our argument is not unreasonable. And when you've got – I don't know how you argue with a straight face when nine state courts, the Seventh Circuit, and the Internal Revenue Service has all said, we believe that, yes, when – you know, if my wife dies and her son is still, you know, my stepson, and that's not only a natural result, but it's – but it's a lawful result here for – for significant legal consequences, for tax consequences, for insurance consequences in all these various cases that were cited. So State Farm has a bevy of good lawyers. They've got one sitting right here. They knew this case law existed for more than 80 years. They knew that the IRS had codified that in the Code of Federal Regulations and said, a relationship based on marriage does not terminate on the death or divorce. It's been real simple to put in their policy, relation by marriage terminates on the death or divorce of the spouse upon whom it is based. One sentence, we wouldn't be here today. Unfortunately, we definitely would have not had even a claim to make. But they did not. And that's why it makes our interpretation at least facially reasonable. And as long as it's a reasonable interpretation, then coverage should be afforded. That's – once that threshold is reached, there's – it doesn't – it's not discretionary. It's not, well, which is better policy-wise or anything else. Once that threshold is reached that we are not making an unreasonable argument, then per that case law, the court – the trial court was required to find that we were insured for – or that Blake Miller wasn't insured on June 18th, 2016, when this tragic accident occurred. May I ask you another question? Mm-hmm. This is really a two-part argument. That's correct. And I think the court handled it that way. That's correct. The first was whether or not he resided with Winnie. Mm-hmm. Right? The court found that there was conflicting evidence on that. Yeah, but – And then denied summary judgment, which it should have if there's a question of fact. Yeah, I agree, Your Honor. That's what the trial court found. It's a little unusual in the circumstance when there are cross motions for summary judgment because there's a case law that says when there are cross motions, the parties are admitting that there's no material question of fact to be decided. Exactly. And we're starting to see cross motions for summary judgment when, indeed, there's a lot of questions of fact. I don't know why that's happening below, but it is. Yeah. Obviously, you and State Farm disagreed on what the term resided means. We did. I don't think that there was a material dispute, though, as to the facts. Now, what legal interpretation you give to those facts is the facts really were not disputed, and that's why I think we both filed motions for summary judgment. He moved in with her in December. Okay, well, I want to get to the procedural position of this case first, and that is if he denied summary judgment, is your complaint as to that issue still alive? I'm not sure what happened. I think absolutely. I think this Court, if the Court, if this Court would find in favor of us on the relationship issue, obviously, if it doesn't, the case is over because then we have to satisfy both prongs of the test. But if the Court would find in favor of us and reverse the trial court's finding, then I think this Court has a choice as to how it would proceed except the trial court's determination that notwithstanding cross motions for summary judgment, the Court found triable issues of fact and remanded for trial on that issue. So the Court did not enter summary judgment for the defendant either? On that issue. I'm only talking about issue one. That is correct, Your Honor. So on issue one, the issue of residency, that issue would still be, the Court would go to a hearing, et cetera, given this Court reversed on the second issue? Well, I think that's one possible result. I think the other possible result is that the record is in front of this Court and this Court could determine that the Court errs in that or law on this record of finding triable issues, of genuine issues of triable fact here and find summary judgment, I guess, either for or against. Now, we would certainly argue that this record is absolutely crystal clear that he was a resident for six months. The trial court launched into discussion about the fact that prior to December 15, when he moved in, there had been no contact for several years. But the trial court also correctly pointed out that the only relevant date is June 18, 2016, the day of the accident. So that, you know, I'm not sure why the Court got into that prior history before December of 15. And I think on this record, there's really no triable issue of fact that he certainly wasn't residing anywhere else and there's no evidence that he was. And the insurer, you know, gave a statement which she reaffirmed under oath in her deposition saying that he resided with me for five months. She did his laundry. She gave him spending money. He slept there most of the time. Occasionally, he'd take off for a day or two and she wouldn't know where he was. But he didn't have his own room. Was that something? That is a conflicting fact, but I don't think it's a determinative fact. I mean, residence, as we've cited in our brief, is really a question of intent, okay? You obviously don't have to have a room to be resident with somebody. You don't have to get your mail there. If that's your, as of this day, this is what I intend to and act as my residence, then that's my residence. I mean, this isn't as if he moved in there the day before or two days before. He was there six months. Don't we have to give deference to the trial court who was looking at the witnesses or the evidence? Well, the court wasn't in this case. This court clearly says, based upon these conflicting facts, this court cannot find as a matter of law that Blake resided. So it seems to me that, in deference to the trial court, that we would at least have to consider that the court would hold a hearing as he indicates he would. Well, and I think that's a possible result, but I think coming up on either a granting or a denial of a motion for summary judgment, the standard is de novo as opposed to any deference. The court didn't hear testimony. The court didn't assess credibility. The court didn't assess credibility. Well, it didn't determine credibility. The court thought that there was differing issues, but I think a court in this court could read those exact same transcripts, the exhibits that were attached to the cross motions, and determine that, as a matter of law, there is no triable issue. A jury could not listen to that evidence and come back and find he was not resident there. Now, could you make the other decision? Yes, in which cases would be remanded for trial on that issue. So as to issue one, the relief that you're asking for from this court is either a grant of summary judgment to your client. That's correct. Or a remand for hearing. That is correct, Your Honor. And I think if the court did not grant summary judgment to us on that issue, the remand would be virtually automatic because the trial court did not grant summary judgment to defendant on that issue. The trial court did not decide that issue. Again, it became moot with what the trial court decided on the relative issue. And, again, we think that it's just really hard to argue that our position is wholly unreasonable. No reasonable person could adopt that argument when multiple courts have, when the IRS has, and when that's been long-standing out there, published opinions setting forth exactly the argument we're making today. What about the Steele case? Could you discuss that? Yeah, the Steele case is a 1935 Seventh Circuit case that involved a life insurance claim of, if I remember right, a sister-in-law that a brother-in-law that was in the service had passed and was making a life insurance claim under the soldier's life insurance. And the relationship was literally, if it would be, no longer existed because whoever that relationship was dependent upon was deceased. And the court discussed, cited all these cases from all these various case laws, from all these various jurisdictions, and cited the language I've just stated, that no rule is known under which the relation of affinity is lost on dissolution of marriage or death, and found that she was entitled to the life insurance benefit. As I said, all the other cases cited all appear to be insurance cases of one kind or another. And there's several other quotes in our brief on that. So, again, that does bring up one further point, too. We have to also remember that this is not a stranger, a liability claimant making a claim against a policy or a named beneficiary. This is, if we're right, Greg Miller was an insured. He was part of this, he was a contractual insured. This is a direct first-party claim against his own insurance company, assuming the court accepts our argument. So that's a little bit different than making a liability claim, which is one of the cases that State Farm cited. Thank you. Good morning, Your Honors. May it please the Court, my name is Elizabeth Clementeva and I'm here on behalf of the plaintiff, State Farm Mutual Automobile Insurance Company. As counsel has properly stated, What's his name again? It's Elizabeth Clementeva. Okay. Like Elizabeth. As counsel has properly stated, the issue before this Court today is whether the deceased Blake Edward Miller Did you slow down just a tad? Sure. Whether he qualified as a resident relative of the named insured, which was Ms. Winnie Robertson, specifically on the day of the accident, which was June 18, 2016. Counsel, what about this argument that, well, look, you know, I could have a family member that gets divorced and say I had a former, you know, sister-in-law. Well, you know, the family still loves her, so she still comes and hangs out with us and so we view her as our sister-in-law. And that's sort of the argument I guess Mr. Terlizzi is making. Is that a reasonable interpretation? Because he says that all they have to do is show it's reasonable and then coverage is required. Sure. Before I answer that, I would like to just, again, remind the Court that under insurance construction, if there is a term that it has been specifically defined within the policy and if it is clear and unambiguous, such as relative here, which is defined by, you know, blood, marriage, or adoption, the Court should not go further and read any, you know, creative meanings for what relative means. What? Say that again about relative? So relative here is defined as one who is related to the name of insured or the spouse by blood, marriage, or adoption. It's State Farm's position that this is clear and unambiguous language, that this is the, it should be afforded the plain and ordinary meaning  and what marriage is specifically. And as to the argument of, you know, whether a relationship by affinity existed, State Farm's position is that that is an inappropriate standard that should not really have been even, you know, it should not have gone that far to even examine the relationship by affinity. But it doesn't say existing marriage. It doesn't, Your Honor. But I mean... And it says, who's related to the named insured or his or her spouse by blood in the past tense, related, not who is related by existing marriage. That's true. That's true, Your Honor. I guess it could cut both ways, I guess. It could. But I'm interested in the answer to what Justice Overstreet asked. Sure. So, Your Honor asked basically about the relationship by affinity aspect. I'd like to just make one notable distinction in regards to that. So even if we were to assume, you know, in arguendo, if we were to apply this relationship by affinity standard to this former stepmother and former ex, you know, stepson, the case that was cited by counsel, the Steele case, clearly states, you know, where the relationship by affinity is in fact, so on and so forth, and where the parties continue to maintain the same family ties and relationships considering themselves morally found to care for each other. As the trial court has properly found, the trial court did apply this relationship by affinity standard to the specific facts of this case and has found that it's just simply not here. There's no evidence that Winnie, Winnie Robertson, viewed her former stepson, Blake Miller, as, you know, continuing this relationship as, as stepmother and stepson. They haven't spoken for a number of years beforehand and actually... Well, let me ask you, what do you think the effective date is that we should use in looking at the relationship by affinity for the claim? I mean, the, of course, the date is of the date of the accident, which would be June 18th of 2016 and that's how... So, all of the past that she didn't have a relationship, it seems that she testified that as of the date of death, she had been giving him money, she had been giving him shelter, she says she loved him. So, as of the date, it looks like she's reunited that relationship, which only arose as a result of the marriage. She wouldn't have known about it by then. Correct, Your Honor, of course. So, I'm interested in your view as far as dates because there is a lot of testimony as to what she did before, in the few months before. Sure. I mean, the date, of course, is relevant. The day of the accident is how, you know, this policy should be viewed. However, if we were to consider this relationship by affinity, despite the day of the accident being, of course, the number one relevant date, we should still examine the circumstances of how the relationship came about. Winnie has specifically both testified and has given a recorded statement to State Farm prior to that, in which she clearly does not view either Blake Miller or his infant daughter, her name was  as her family. She, and I quote, she says, they're not my family. She's a good little girl, but she's not my family. She's not mine. She has her own family. I mean, this is, and this was obviously taken after the fact of the accident, so it's not on the day of the accident, but I think these, the circumstances of their relationship, if we were to apply this relationship by affinity, which State Farm does not concede that we should even go there to begin with, but if we were, if we were making this argument, then I think examining those family ties and whether she really was morally bound to him, I mean, the evidence in the record clearly shows that she was not. And how the circumstance came about in the first place was that he had called her sometime around Christmas in 2015 after not speaking to her for a number of years, and he had asked her whether she would actually rent him a hotel room. He did not even intend on staying there and she did not intend, as we have heard counsel say, to keep him at her home for any length, you know, length of time. So, I mean, the record is clear that he, he in fact just wanted a hotel room. He did get her home and he did end up staying there for quite, you know, quite some time longer than one week. But despite the fact, the intent of, it was neither of these two parties' intent. It was not Blake Miller's intent, nor was it the former stepmother's intent to have him live there at this time. And in addition to that, I know that we have a... I mean, we have been collecting evidence for him to make a conclusion of law. Sure. So that's a problem. Sure. The question of law here is whether your policy allows a  by affinity to survive in the term relative, right? Right. Why couldn't State Farm just have said but excludes relationship by affinity? I mean, that term has been out there for 80 years at least. We know of it. It has been out there. Maybe State Farm will. Perhaps it will. Perhaps it will after this case. Why not just put that in there? Right. Avoid any confusion. I think as counsel probably stated this is the case somewhat of first impression and I don't believe that State Farm or well I guess it would be State Farm who created the policy would have ever thought that terminating marriage terminates or divorce or death terminates a marriage. I mean, there's clear law that says that. So when State Farm had reasonably limited its policy provision to those individuals that are still related by marriage if there's again a death of one of the spouses or if there is a divorce then clearly the marriage is terminated and State Farm just didn't feel the need that it needs to specifically supplement that. Insurance companies operate on risk assessment right? Right. So if you don't cover a stepson for example because the father again hypothetically dies or there's divorce then that's just the luck of a draw for State Farm. Well we got lucky they got divorced two days before. I mean, what do you do about that? Right. I mean it just seems to be potluck in this section. It can't be applied uniformly because it's not a calculable risk it's just potluck. Right. And I know counsel does address that too and he makes the hypothetical if there's an accident the day after a divorce occurs. I mean, what happens? Is there no coverage? And State Farm would just say correct there is no coverage. Is that unreasonable? I mean that is do you agree that's the standard by the way? That there would be no coverage in that situation? No. That our plaintiff's burden is to show that your interpretation is unreasonable that it's unreasonable to take your State Farm's interpretation? Um I you know it's my understanding that counsel is trying to say that there's two reasonable interpretations here. That both State Farm's interpretation as he has conceded is reasonable and he believes that his interpretation is reasonable. Um What do you think our standard is here? The standard of review. The standard of review in totality is de novo. Um so but I don't think we even have to go there. I mean I'm making this argument again with the relationship by affinity saying that um Steele would just be an example of family ties. You know there was the soldier and it was the brother-in-law and it was excuse me the sister-in-law and the sister-in-law continued to live with the deceased soldier's father. They continued to hold themselves out as a family unit for a number of years before the issue in that court the 1935 case presented itself. Here that's simply not you know not the case. So back to the argument of you know the two reasonable interpretations again I just don't think we even have to go that far. I think if there is a clear and ambiguous language you know policy provision and it has been defined the term relative has been defined in there the blood marriage or adoption again marriage terminates upon death of a spouse or divorce that's already been established and there's no need to creatively read into that and to make something ambiguous which is not ambiguous to begin with. State Farm being sure they have the right to limit coverage. They have the right to make a contract with its terms a contract that will be adhered to by another party meeting of the mind so on and so forth they have a right to restrict coverage with reasonable interpretations excuse me reasonable restrictions as long as that restriction does not violate or contradict law or violate public policy and here the fact that once a marriage ends you know legally whether by death or divorce I mean that is it that is the stopping point there it's not it's not against public policy to limit that coverage so State Farm could very well just say that's it counsel I and I find your argument reasonable to take a literal interpretation but what about counsel's argument that perhaps nine other states as persuasive authority have found that you know it's also a reasonable interpretation that unless it's specifically defined otherwise that you know a relationship on life and continues after death or divorce including the IRS sure of course as your honors know I mean that case has no binding effect on you today in the case before you today you're talking about the 7th circuit case you do know that this court often looks to federal law where there is no state law and we have a 1935 federal case that has never been advocated clearly no not to my knowledge it interprets Wisconsin law and sure there are a number of states you know in different cases that were cited within steel from different states as counsel has already listed notably not one of them is Illinois and you know there is no case on point factually but state farm has cited groves and a few more cases that has already determined that one relative is not ambiguous and secondly groves which is an Arizona case groves versus state farm that was the case that mentioned the relationship by affinity in relation to a former son-in-law and I believe it was also for uninsured coverage in that case and the son-in-law there argued that he even after the divorce with his wife which was the insured daughter that he still lived with his ex-wife that he visited his former mother-in-law and he presented all of these factual scenarios which he argued the court there should have found that with the changing times of society and how relationships change and so on and so forth that there was still a relationship by affinity that existed there however the appellate court in Arizona strictly came down and said no that he was the former son-in-law that relative was unambiguous that he was not still married to the wife so therefore he was not related to the wife's mother who was the name insured in that case the trial judge has agreed and also pointed out in his decision now I mean I would just like to you know again say that one State Farm does not think that we need to even read into this relationship by affinity it's something that was not covered by another Illinois case before I mean sure it was his first impression so your honors can decide it here and now but I think the lack of case law Illinois case law that discusses a relationship by affinity in circumstances such as this where you know liability or either first party or third party insurance coverage issues if the policy provisions are clear and they define what a relative means and they define the relative as again blood marriage or adoption and marriage again terminates upon the death or divorce then the lack of such case law in Illinois is indicative of the fact that this language is clear and unambiguous period again but if we were to entertain the relationship by affinity argument then again Steele is just Steele would not be of benefit to counsel I mean Steele clearly says that as the families still maintain family ties and morally bound to each other but then that's a question of fact I mean that's what I don't understand about all these motions summary judgment whether or not there if we find as a matter of law that this policy includes relationship by affinity and it seems to me it's a question of fact as to what was the relationship I mean I don't know how else you decided except to have that flushed out more and maybe then it is summary judgment but at least at this stage I and the judge agreed this is the first issue I think on the second issue the judge is basically saying we don't have relationship by affinity this policy doesn't include that right do you agree with that I mean I certainly agree to the second the second prong I disagree in the sense again that the relationship by affinity should not have been considered but I do agree with the court's ruling in terms of the primary residence I mean on its face it seems like there is conflicting factual discrepancies here I would like to say that I don't believe there are I mean if you view all of the evidence in the record if you consider all of the testimony that was provided I just don't believe that there was I mean the primary residence again I'll just briefly touch this point because I haven't delved into it too much but the focus on primary residence is primarily resided you can have multiple homes you can have a vacation home and part time here and part time there but here this is primarily resided and council has cited to some case law that regards residence in the household and none of the case law that he has cited to has the word primarily either before or after it here the record is clear as Winnie has testified herself that Blake Edward Miller has stayed with her for two nights and she listed about five other individuals most of them were other family members and cousins and what not that Blake Edward Miller also stayed with and in fact may I ask one question yes you're not going to be back up I have just one question you mentioned Groves the Groves case which is Arizona yes your honor since 1935 when Steele was decided Arizona is the only  I can find and I don't see any others in your brief that have disagreed with the Steele case do you know of any other state I mean there seems to be no other state except Arizona that has changed its mind on Steele do you know of any not that I have before me your honor and you know to that point again I would just say that Steele is just  inapplicable I mean it concerns the war risk insurance it's not I just don't think it's on point okay thank you thank you your honor again to be clear the question is not if this court was deciding de novo this issue does a relationship of affinity survive the death or dissolution of the spouse it's dependent upon as a matter of first impression like the Steele case did in 1935 the question this court has to decide is is the interpretation that it survives was that interpretation in 2016 a reasonable one and for the life of me when you've got the 7th circuit 9 states and the IRS all supporting that position and making that determination going back 80 years prior to the relevant date in this case how you can argue with a straight face that's totally unreasonable and once this court determines not that you agree with it or disagree with it but as long as you have determined that that is a reasonable interpretation then Supreme Court precedent in this state says you have to choose that and the trial court was bound by that the second major point I'd like to make is that I I don't think under this circumstance a fact specific test as to whether there's a relationship of affinity or not is either appropriate or necessary and that is because of the other prong of this test here to see whether there's insured he has to be resident with the name insured now you let somebody live in your house invite them to stay in your house and they live there for six months I mean that by definition sets forth a relationship you don't invite strangers in off the street obviously there's a relationship there and I the term reside has a legal meaning that's correct been interpreted in case law based on facts in many different ways what I'm saying and I understand that there has to be a decision made either that it's subject to summary judgment or that it's a tribal issue of fact in this case but what I'm saying as far as determining whether there's a relationship by affinity I don't think it's necessary to kind of tie those issues together because if you decide he's not resident there or if the trial court would decide on remand it doesn't matter whether there's a relationship with affinity or not we have to satisfy both prongs but what my argument would be is if you satisfy that residency prong then that's enough of a relationship that if the court decides it's a matter of law it can survive the death of the spouse or the dissolution then there's no need to have a trial over how close they were or that because she let him resign did the trial court make any specific findings that affinity didn't exist or was just a question of fact that was discussed I read the trial court's order to say it's irrelevant that the policy said by marriage and the marriage ended and therefore he's not an insured now I don't know if that's a correct reading that's certainly my reading he did go on to mention about these you know before December 15th there had been a long period of time where there was no contact I don't see the relevance or the materiality of that time frame again counsel concedes as we must was there coverage on June 18th or not that's the date to find out was he a resident of her household was he related to her by marriage by affinity I think the answer to both questions are yes it's a fun case interesting case thank you counsel we appreciate your argument we'll take a minute to revise